## IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 54076-2-II |
| Respondent, | |
| v. | |
| AARON FREDERICK WARKENTIN, | UNPUBLISHED OPINION |
| Appellant, | |

LEE, C.J. — Aaron F. Warkentin appeals his conviction and sentence for third degree assault, arguing that the trial court erred by failing to inquire into his motion for new counsel and by imposing discretionary legal financial obligations (LFOs) after finding that he is indigent.[1] We affirm Warkentin's conviction but remand to the trial court to strike the discretionary LFOs.

FACTS

On January 3, 2019, the State charged Warkentin with third degree assault.

---

[1] Warkentin also filed a Statement of Additional Grounds (SAG) under RAP 10.10. Under RAP 10.10(c), a SAG must inform this court of the nature and occurrence of the alleged errors. Warkentin's vague references to statements made by defense counsel or plea agreements do not inform this court of the nature and occurrence of the alleged errors as required by RAP 10.10(c). Furthermore, the majority of allegation in Warkentin's SAG refer to matters outside the record before this court. We do not consider matters outside the record in a direct appeal. *State v. McFarland*, 127 Wn.2d 322, 338, 899 P.2d 1251 (1995). Issues that rely on matters outside the record must be raised in a personal restraint petition. *Id.* Therefore, we do not consider the claims made in Warkentin's SAG.

On the day of Warkentin's jury trial, the State and defense counsel both stated that they were ready to proceed to trial, but defense counsel informed the trial court that Warkentin had something he wanted to say. Warkentin asked counsel to read a written statement to the court:

> "Replace [defense counsel's] bias on his ideas to me. I believe I voiced a concern out loud in court, but not in a particular order, not spending enough time discussing what constitute an assault 3, being flip-flopped on outcome of trial, not spending enough time talking to me about the process of proceedings."
>
> "One day, there was an armament while I was in custody. No prosecutor was present. He said, 'I don't know why we are before you,' something about an assault 2, Your Honor. I was on vacation.
>
> "Mostly, no advocating, just installing—instilling a fear of prosecution. He doesn't care when we go to trial, game playing and plan, selling me on the idea of making me lose (inaudible) and thinking being the trial option in this course over my (inaudible) and direction. Once I have presented opinions or ideas like apology—"

I VRP (Sept. 9, 2019) at 10. Warkentin interrupted counsel and stated,

> I think this was going along (inaudible) sorry—out of me enough that—showing up 30 times. I'm not a habitual offender. I got the message, but I think it's outlandish to do a trial, spend 30 or 60,000 for—if I would have assaulted a cop, I think I would have been thrown to the ground immediately. Something—they are that smart. I give them all that and then some.

I VRP (Sept. 9, 2019) at 10-11.

The trial court reminded Warkentin that everything he was saying was on the record. The trial court then asked, "What are you specifically asking this Court to do at this time?" I VRP (Sept. 9, 2019) at 11. Warkentin responded,

> Well, I don't—we're on the same page to go to trial, if that's the course of action that we're going to take. I don't feel comfortable with him at all. I have voiced it twice. Once with an evaluation that I had, just a distrust. We've had a lot of communication gaps. He says that all the time, in fact, that we have—you're not understanding me. "Do you understand this," over and over again, even in the hall and separate rooms, and apparently, I don't.
>
> But I thought this assault 3 was a realistic prosecution for a touch, then I would have pleaded—taken a plea a long time ago. I just—I don't understand it, apparently. That's why the (inaudible) or pencil in writing is.

I VRP (Sept. 9, 2019) at 11.

The trial court told Warkentin that the prosecuting attorney decides what charges are filed and pursued. The trial court also stated that defense counsel had the ability to bring a motion to dismiss if he thought such a motion would be appropriate. The trial court further stated, "So now we're set to go to trial, and that's what we're going to do today." I VRP (Sept. 9, 2019) at 12.

A jury found Warkentin guilty of third degree assault. The trial court imposed an exceptional sentence downward. At sentencing, the trial court found that Warkentin was indigent under RCW 10.101.010(3). Despite finding Warkentin indigent, the trial court imposed a $200 criminal filing fee, $250 jury demand fee, and a $1,400 court-appointed attorney fee. The trial court also imposed community custody supervision fees.

Warkentin appeals.

ANALYSIS

Warkentin argues that the trial court erred by failing to inquire into his motion for new counsel. Warkentin also argues that the trial court erred by imposing discretionary LFOs. We affirm Warkentin's conviction but remand for the trial court to strike the discretionary LFO's.

A. FAILURE TO INQUIRE

Warkentin argues that the trial court erred by failing to make a full and adequate inquiry into his motion for new counsel. However, because Warkentin did not make a motion for new counsel, the trial court did not err. Accordingly, we affirm Warkentin's third degree assault conviction.

A criminal defendant's right to counsel is guaranteed under the Sixth Amendment of the United States Constitution and article I, section 22 of the Washington Constitution. However, this right is not absolute and indigent defendants do not have the right to counsel of their choice. *State*

*v. Varga*, 151 Wn.2d 179, 200, 86 P.3d 139 (2004).  To justify replacing appointed counsel, a defendant must show good cause.  *Id*.  Good cause includes a conflict of interest, irreconcilable conflict, or a complete breakdown in communication.  *Id*.

Failure to substitute counsel violates the right to counsel when the relationship between counsel and the defendant has completely collapsed.  *State v. Cross*, 156 Wn.2d 580, 606, 132 P.3d 80, *cert. denied*, 549 U.S. 1022 (2006).  The relationship must be so diminished as to prevent presentation of an adequate defense.  *State v. Stenson*, 132 Wn.2d 668, 734, 940 P.2d 1239 (1997), *cert. denied*, 523 U.S. 1008 (1998).  General dissatisfactions, distrust, or loss of confidence is not sufficient cause to appoint new counsel.  *Varga*, 151 Wn.2d at 200.

We review a trial court's decision regarding replacement of counsel for an abuse of discretion.  *Id*.  When reviewing the denial of a motion to replace counsel, we consider (1) the extent of any conflict between the defendant and counsel, (2) the adequacy of the trial court's inquiry into that conflict, and (3) the timeliness of the motion to appoint new counsel.  *Cross*, 156 Wn.2d at 607.

Here, Warkentin did not make a motion to appoint new counsel.  There was nothing filed with the trial court.  And Warkentin's written statement was vague and confusing.  The trial court gave him an opportunity to clarify his request by asking, "What are you specifically asking this Court to do at this time?"  I VRP (Sept. 9, 2019) at 11.  Warkentin did not respond by asking for new counsel.  Based on the exchange, Warkentin's dissatisfaction seems to be from not understanding why he was being charged and going to trial for something he did not consider a third degree assault.

Because Warkentin never actually asked the trial court to replace his counsel and did nothing more than express his general dissatisfaction with his case, the trial court did not abuse its

discretion by proceeding to trial.[2] Accordingly, we affirm Warkentin's conviction for third degree assault.

B.    DISCRETIONARY LFOs

Warkentin argues that the trial court improperly imposed discretionary LFOs after finding that he is indigent. The State concedes that discretionary LFOs should be stricken. We agree and remand to the trial court to strike the discretionary LFOs.

Under RCW 10.01.160(3), the trial court may not impose discretionary costs on indigent defendants. RCW 36.18.020(2)(h) provides that a criminal filing fee cannot be imposed on a defendant who is indigent under RCW 10.101.010(3). And the court appointed attorney fee, jury demand fee, and community supervision fee are all discretionary LFOs. *See* RCW 10.01.160(2)-(3); RCW 10.46.190; RCW 9.94A.703(2)(d).

---

[2] Even if we were somehow able to construe Warkentin's statements as a motion to replace counsel, the trial court did not abuse its discretion by denying the motion. When reviewing the denial of a motion to replace counsel, we consider (1) the extent of any conflict between the defendant and counsel, (2) the adequacy of the trial court's inquiry into that conflict, and (3) the timeliness of the motion to appoint new counsel. *Cross*, 156 Wn.2d at 607.

Here, Warkentin did not identify any irreconcilable conflict or complete breakdown of communication. He only expressed some distrust and general dissatisfaction with the fact that his suggestions to avoid a trial, such as providing an apology, were not well received or acted upon. Moreover, the trial court gave Warkentin an opportunity to clarify what he was asking of the court. And Warkentin told the trial court he agreed with going to trial. Furthermore, Warkentin's request was not timely. Warkentin did not make his request until the morning of trial, so any replacement of counsel would likely have required a continuance. Warkentin's complaints actually included how many times he had already had to go to court. Replacing counsel would have only delayed resolution of the case and increased the number of times Warkentin would have to appear. Thus, given the relevant factors, of which adequacy of the trial court's inquiry is only one consideration, even if Warkentin's statements can somehow be construed as a motion, the trial court did not abuse its discretion by denying Warkentin's request for new counsel.

No. 54076-2-II

Because the trial court imposed discretionary LFOs on a defendant that the court found to be indigent under RCW 10.101.010(3), we accept the State's concession. Accordingly, we remand to the trial court to strike the discretionary LFOs.

We affirm Warkentin's conviction but remand to the trial court to strike the discretionary LFOs.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____, C.J.
Lee, C.J.

We concur:

_____
Worswick, J.

_____
Sutton, J.

6